[Cite as *State v. Davic*, 2026-Ohio-1662.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                      :

        Plaintiff-Appellee,               :

                                       No. 24AP-755

v.                                                 :       (C.P.C. No. 10CR-6766)

Bradford S. Davic,                                 :       (REGULAR CALENDAR)

        Defendant-Appellant.             :

---

D E C I S I O N

Rendered on May, 7 2026

---

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

**On brief:** *Bradford S. Davis*, pro se.

---

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Defendant-appellant, Bradford S. Davic, appeals from the decision of the Franklin County Court of Common Pleas denying two motions he filed seeking to withdraw his guilty plea. Because Mr. Davic has not demonstrated the manifest injustice that Crim.R. 32.1 requires to grant a postsentence motion to withdraw a plea, the trial court did not err when denying his motions, and we accordingly affirm.

{¶ 2} Mr. Davic drove from Pittsburgh to Columbus to meet a 12-year-old girl he had "befriended" online, sexually assaulted her, then confessed to police after his arrest. *State v. Davic*, 2012-Ohio-952, ¶ 4 (10th Dist.) (hereinafter "*Davic I*"). On November 19, 2010, the state filed a seven-count indictment against Mr. Davic that alleged a second-degree felony for importuning in violation of R.C. 2907.07; five first-degree felony counts of rape in violation of R.C. 2907.02, each with a sexually violent predator specification

under R.C. 2941.148; and one third-degree felony count of gross sexual imposition in violation of R.C. 2907.05. (Nov. 19, 2010 Indictment.)

{¶ 3} In lieu of trial, Mr. Davic entered into a plea agreement. The state agreed to dismiss one of the five rape counts, as well as the sexually violent predator specifications accompanying the remaining rape counts. In turn, Mr. Davic agreed to plead guilty to the remaining four counts of rape, as well as the charges of importuning and gross sexual imposition. (Apr. 19, 2011 Entry of Guilty Plea.) The trial court sentenced him to ten years to life on each of the four rape counts, each to be served consecutively and concurrently with terms of eight years on the importuning count and five years on the gross sexual imposition count, for a total sentence of 40 years to life. (May 24, 2011 Jgmt. Entry.) In addition, the judgment entry stated that Mr. Davic would be classified as a Tier III sexual offender, requiring him to register as a sex offender for life.

{¶ 4} Mr. Davic appealed, asserting that his plea was not knowing, intelligent, and voluntary, in violation of Crim.R. 11 and his due process rights under the Ohio Constitution and the United States Constitution. He argued that "he had been promised concurrent terms of ten years" on the rape counts by his attorney, that had asked the trial court "why his plea form did not reflect [this] agreement," and claimed that the trial court had failed to address the issue at his sentencing. (Oct. 4, 2011 Merit Brief of Defendant-Appellant at 7, 10, Case No. 11AP-555.) In our decision affirming his convictions and sentence, we rejected Mr. Davic's characterization of the plea colloquy:

> During the plea hearing, appellant questioned the plea form he signed because it did not say that he was "agreeing today to a plea deal that was going to be a sentence of ten years with * * * life on the back side." (Tr. 3.) The trial court said that it would discuss the matter later in the hearing, and, contrary to appellant's assertions, it did, in fact, do so. Specifically, the court asked appellant if he understood that he faced a maximum total sentence of 53 years to life in prison, and appellant indicated that he did. The court also asked appellant if he was promised anything in exchange for his plea, and appellant said that there were no promises. Lastly, the court asked if appellant had any questions. Appellant asked no questions and brought up no issues about his sentence.

*Davic I* at ¶ 9.

{¶ 5} We also rejected Mr. Davic's argument that the trial court had erred by failing to merge the rape offenses under R.C. 2941.25. Because each rape charge arose from distinct conduct, each charge was "a separate offense being committed with a separate specific intent and causing separate harm to the victim" and therefore not susceptible to merger. *Id.* at ¶ 15.

{¶ 6} Since losing on direct appeal in 2012, Mr. Davic has repeatedly brought collateral attacks on his convictions. In 2013, he filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio. As in the direct appeal, he asserted that his plea was not knowing, intelligent, and voluntary, in violation of Crim.R. 11 and his due process rights.[1] A magistrate rejected his argument: "Petitioner received the benefit of his bargain: a sentence within the range of ten years to life. To the extent that Petitioner now alleges he believed he would be sentenced to something else, the record contradicts this claim." *Davic v. Warden, Lebanon Corr. Inst.*, 2014 U.S. Dist. LEXIS 148624, *19 (S.D.Ohio Oct. 17, 2014). A district court judge overruled Mr. Davic's objections to the magistrate's decision and denied the writ. *Davic v. Warden, Trumbull Corr. Inst.*, 2014 U.S. Dist. LEXIS 159172 (S.D.Ohio Nov. 12, 2014). Mr. Davic's request for a certificate of appealability, a necessary prerequisite to review by the Sixth Circuit Court of Appeals, was denied as well. *Davic v. Warden, Lebanon Corr. Inst.*, 2014 U.S. Dist. LEXIS 174179 (S.D.Ohio Dec. 17, 2014).

{¶ 7} Mr. Davic returned to state court, where he filed a motion for resentencing and argued that his sentence was void. This court affirmed the trial court's denial of the motion. *State v. Davic*, 2016-Ohio-4883 (10th Dist.). The Supreme Court of Ohio declined discretionary review and denied his request for reconsideration. *State v. Davic*, 2017-Ohio-261 (rejecting appeal); *State v. Davic*, 2017-Ohio-1427 (denying motion for reconsideration). Mr. Davic also filed a motion to correct the judgment entry, arguing that because it had failed to include the sex offender classification imposed on him at sentencing, the judgment never constituted a final appealable order, and that this court therefore lacked jurisdiction to hear the direct appeal. We rejected the jurisdictional

---

[1] Mr. Davic asserted two other grounds for relief, but because he had procedurally defaulted on them by failing to present them to a state court for review, the magistrate ruled that they were unreviewable in the federal habeas proceeding. *Davic v. Warden, Lebanon Corr. Inst.*, 2014 U.S. Dist. LEXIS 148624, *10 (S.D.Ohio Oct. 17, 2014).

argument but agreed that the judgment entry did not include the sex offender classification, and accordingly remanded for the trial court to issue a corrected judgment. *State v. Davic*, 10th Dist. No. 17AP-354 (Dec. 26, 2017) (memorandum decision).

{¶ 8}    After the trial court corrected the judgment with a nunc pro tunc entry, Mr. Davic again filed a motion seeking to have it declared void because of alleged irregularities in the imposition of the sex offender classification at sentencing, and asserted error as well in the imposition of postrelease control. The trial court denied the motion and we affirmed. *State v. Davic*, 2019-Ohio-1320, ¶ 16 (10th Dist.) (holding that Mr. Davic's "judgment of conviction is not void in whole or in part and thus there is no effect to the validity of our prior appellate judgments concerning his sentence"). The Supreme Court of Ohio declined review. *State v. Davic*, 2019-Ohio-3148. Mr. Davic also filed an original action in this court seeking a writ of prohibition, arguing that the trial court "lacked jurisdiction and usurped its authority by imposing a sentence based on a non-existent, unenforceable plea deal." *State ex rel. Davic v. Franklin Cty. Court of Common Pleas*, 2023-Ohio-1195, ¶ 1 (10th Dist.). A magistrate concluded otherwise. We overruled his objections to the magistrate's decision and dismissed the action. *Id.* at ¶ 12. For the sake of concision, the foregoing summary omits numerous other applications for reconsideration and en banc review, motions seeking to certify a conflict, and requests for review in the Supreme Court of Ohio and the Supreme Court of the United States filed by Mr. Davic in the 14 years since the resolution of the direct appeal of his convictions.

{¶ 9}    Mr. Davic's most recent collateral attack on his convictions occurred on April 19, 2024, when he filed two motions in the trial court that are the subject of this appeal. The first was captioned "Motion to Rescind Guilty Plea or Provide Specific Performance" (hereinafter "Motion to Rescind"). He argued that the state had breached the plea agreement in several ways, entitling him to rescind his guilty plea under Crim.R. 32.1. First, he argued that the sex offender classification imposed upon him at sentencing was not a term he had agreed to as a negotiated term of the plea agreement. (Mot. to Rescind at 5.) Second, he argued that although the plea agreement stated that he had agreed to plead guilty to four counts of rape under R.C. 2907.02, and that "all specifications" would be dismissed, the trial court nevertheless imposed sentences on the rape counts with the felony-enhancing specification under R.C. 2907.02(A)(1)(b) based on

the victim's age. *Id.* at 8. Because of these alleged breaches, Mr. Davic argued that he was entitled to specific performance of the actual terms of the plea agreement or, his preferable alternative, withdrawal of the guilty plea. *Id.* at 11.

{¶ 10} Mr. Davic's second motion was captioned "Motion to Correct Judgment Entry and for a New Plea Hearing" (hereinafter "Motion to Correct"). He stated that in the event the trial court granted the Motion to Correct, it would "render" the Motion to Rescind "moot." (Mot. to Correct.) In support of the motion, he argued that the transcript of the plea colloquy reveals that although the trial court "imperfectly" informed him of his constitutional rights under Crim.R. 11, he "never verbally entered a guilty plea" after the discussion. *Id.* at 6-7. Instead, the trial court "merely asked [him] if he had any questions," and, after Mr. Davic stated that he did not, stated that it would "accept [his] plea" with no admission of guilt by Mr. Davic. *Id.* at 7. These alleged deficiencies illustrate that "he never orally and unequivocally pleaded guilty to any charges," he argues, and, as a consequence, he claims that "his plea agreement is still executory." *Id.* at 15. He seeks another corrected judgment entry, or, in the alternative, vacation of his convictions and sentence so that he may enter a new plea.

{¶ 11} The trial court denied both motions on the basis of res judicata, ruling that Mr. Davic could have made all of these arguments on direct appeal. (Aug. 6, 2024 Decision & Entry at 5.) Mr. Davic sought leave to file a delayed appeal after missing the initial deadline, which was granted. He asserts three assignments of error:

[I.] The trial court erred in denying Davic's Crim.R. 36 Motion to Correct Judgment Entry, in violation of his Due Process protections under the Fourteenth Amendment to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

[II.] The trial court erred by not ordering that a new Crim.R. 11 change of plea hearing be held, in violation of Davic's Due Process protections under the Fourteenth Amendment to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

[III.] The trial court erred in denying Davic's Motion to Rescind Guilty Plea or Provide Specific Performance, in violation of his Due Process protections under the Fourteenth Amendment to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

{¶ 12} Because the assignments of error rely on interrelated arguments, they will be addressed together.

{¶ 13} In the first assignment of error, Mr. Davic claims that the trial court erred by denying the Motion to Correct because the current judgment entry "does not speak the truth" about the fact of his conviction and sentence, as required by Crim.R. 32(C). (Brief of Appellant at 8.) In his view, the judgment entry "falsely states" that he entered a plea of guilty after the trial court advised him of his rights because the plea hearing's transcript shows that "the trial court never directly asked him how he pleaded to any of the charges," nor did he "orally and unequivocally enter a plea of guilty" to the charges. *Id.* at 8-9. Mr. Davic asserts that this demonstrates the trial court's failure to effectively accept his plea under Crim.R. 11(C)(2). He also argues that the manifest injustice resulting from the alleged error overcomes any bar to relief based on res judicata. *Id.* at 16.

{¶ 14} The second assignment of error asserts that the trial court erred by not allowing a new plea hearing because those purported irregularities demonstrate that he "never actually entered a guilty plea," so the resulting judgment of conviction "was not and is not a final, appealable order," rendering our direct review "a nullity." *Id.* at 28-30.

{¶ 15} In the third assignment of error, Mr. Davic argues that because the sex offender registry requirement was not mentioned in the plea agreement or at his original plea colloquy, the trial court's imposition of the requirement at sentencing amounted to a breach of the plea agreement. Accordingly, he believes that his "conviction must be vacated" and that he is entitled to withdraw his plea. *Id.* at 43.

{¶ 16} The state counters that Mr. Davic's allegation of error under Crim.R. 11 during his plea "illustrates perfectly" the sound policies of preserving finality and judicial economy that justify the doctrine of res judicata. (Brief of Appellee at 12.) The state points out that he failed to object during the plea colloquy or at sentencing that the trial court had not afforded him the opportunity to enter a plea. More importantly, he failed to raise the argument during the direct appeal, even though his argument now "relies solely on materials that were in the direct-appeal record." *Id.* at 9. In his numerous previous filings in the trial court and subsequent appeals, he failed to raise the argument he now raises, even when he alleged other grounds for invalidating the plea. *Id.* at 10-11. The state also counters that, even if res judicata did not apply, an examination of the statements made

during the colloquy in their totality show that Mr. Davic's plea was entered knowingly, intelligently, and voluntarily, in accordance with Crim.R. 11. The state also argues that res judicata bars Mr. Davic from raising the argument that his plea agreement was breached, as it too could have been raised on direct appeal.

{¶ 17} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). "To ensure that pleas of guilty and no contest are voluntarily, knowingly, and intelligently made, trial courts must accurately advise defendants of the law in Crim.R. 11 plea colloquies." *State v. Clark*, 2008-Ohio-3748, ¶ 41. Crim.R. 11(C)(2) governs plea colloquies in felony cases. The version of the rule in effect at the time of Mr. Davic's plea proceeding provided as follows:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2) (2011).

{¶ 18} A trial court must strictly comply with the provisions of Crim.R. 11(C) when accepting a defendant's plea. *State v. Miller*, 2020-Ohio-1420, ¶ 1. Under this standard, "a trial court strictly complies with Crim.R. 11(C)(2)(c) when in its plea colloquy with the defendant, it advises the defendant in a manner reasonably intelligible to the defendant that the plea waives the rights enumerated in the rule." *Id.* at ¶ 19.

{¶ 19} Criminal Rule 32.1 governs the withdrawal of a guilty plea and states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." "A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. An appellate court's "review of the trial court's denial of a post-sentence motion to withdraw a guilty plea is limited to the determination of whether the trial court abused its discretion." *State v. Morgan*, 2012-Ohio-5773, ¶ 11 (10th Dist.), citing *Smith* at paragraph two of the syllabus.

{¶ 20} Generally, however, "res judicata bars a defendant from raising claims in a post-sentence motion to withdraw his guilty plea that were either raised or could have been raised in a direct appeal from the judgment of conviction and sentence." *State v. Lowe*, 2015-Ohio-382, ¶ 10 (10th Dist.). *See also State v. Ketterer*, 2010-Ohio-3831, ¶ 59 ("Ohio courts of appeals have applied res judicata to bar the assertion of claims in a motion to withdraw a guilty plea that were or could have been raised at trial or on appeal."). For several reasons, the trial court did not err when ruling that res judicata barred Mr. Davic from his attempting to withdraw his guilty plea under Crim.R. 32.1.

{¶ 21} Mr. Davic's case for withdrawing his plea relies entirely on evidence in the record that was available during the direct appeal of his convictions, and is therefore a paradigmatic example of the type of collateral attack on a conviction subject to res judicata. His argument that the plea colloquy was ineffective because of his failure to affirmatively and expressly state "I plead guilty" derives from a novel interpretation of the same hearing transcript used to prepare the direct appeal. *State v. Cartlidge*, 2021-Ohio-3787, ¶ 10 (3d Dist.) (holding that res judicata barred appellant from attempting to withdraw a guilty plea after sentence where the "alleged errors regarding what happened at the plea hearing were

clearly available as part of the original trial court record," thus appellant could not overcome res judicata under the exception for new evidence, outside the record"). Likewise, the plea agreement was part of the record during the direct appeal as well, and Mr. Davic was required to assert any argument alleging its breach at that time. The assertion of this argument now is also subject to res judicata.

{¶ 22} In fact, Mr. Davic did challenge the plea colloquy in the direct appeal, claiming that it was not knowing, voluntary and intelligent under Crim.R. 11(C). The argument he made then was that he was not accurately informed of the parameters of the sentence. (Merit Brief of Defendant-Appellant, Case No. 11AP-555 at 7-10.) His briefing in the direct appeal relied on verbatim quotations from the transcript of the plea colloquy, as does his briefing in the present appeal. He could have asserted the same argument he asserts today at that time. He did not, so res judicata applies.

{¶ 23} Mr. Davic's position during the direct appeal was that "the court accepted the plea," albeit erroneously. *Id*. at 11. Then, however, he repeatedly referenced the trial court's acceptance of the plea, which he now claims didn't actually happen. "The guilty plea in the present case was taken in violation of Crim. R. 11(C)(2)," he argued. *Id*. at 13. "The court did not correct Appellant's misapprehension at the time of the plea and accepted Appellant's plea," he asserted. *Id*. Now, however, he parses the exchange between himself and the trial court differently while asserting the same rule was violated. As we noted in one of Mr. Davic's previous filings, this is precisely the type of "piecemeal motion and appellate practice" that res judicata serves to check. *State v. Davic*, 2019-Ohio-1320, ¶ 10 (10th Dist.). *See also State v. Hughes*, 2012-Ohio-706, ¶ 9 (8th Dist.) (noting that "res judicata will apply when a defendant brings piecemeal claims in successive motions to withdraw a guilty plea that could have been raised on direct appeal").

{¶ 24} "A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *Smith*, 49 Ohio St.2d at paragraph one of the syllabus. Manifest injustice "has been variously defined, but it is clear that under such standard, a postsentence withdrawal motion is allowable only in extraordinary cases." *Id*. at 264, citing *United States v. Semel*, 347 F.2d 228 (4th Cir. 1965). Mr. Davic refers only in passing to this standard in his brief. (*See* Brief of Appellant at 16.) He argues that "where (as here) transcripts establish that no guilty plea was entered in open

court, 'Applying res judicata under the circumstances of this case would be manifestly unjust.'" *Id.*, citing *State v. Washington*, 2016-Ohio-1464, ¶ 10 (8th Dist.). In *Washington*, the defendant's multiple convictions were consolidated in a single proceeding. Then, in a direct appeal from a community sanctions violation, he included additional transcripts from outside the record that did "not contain any evidence of [him] entering a guilty plea in open court" to one of the convictions. *Washington* at ¶ 5. Notably, the court did not allow the defendant to withdraw his guilty plea, holding instead that his reliance on evidence from outside the record required him to raise the argument in a postconviction proceeding. *Id.* at ¶ 14. Those are not the circumstances here, where Mr. Davic relies only on evidence that was squarely before him during the direct appeal.

{¶ 25} The manifest injustice standard is a high bar. As the Supreme Court of Ohio has explained, it involves "a 'clear or openly unjust act' " that reveals "a fundamental flaw in the plea proceedings resulting in a miscarriage of justice." *State v. Straley*, 2019-Ohio-5206, ¶ 14, quoting *State ex rel. Schneider v. Kreiner*, 1998-Ohio-271 and citing *State v. Tekulve*, 2010-Ohio-3604 (1st Dist.). Mr. Davic now claims a manifest injustice occurred—one that was never, until now, clear enough to identify in the plea transcript when alleging error in the direct appeal or in a multitude of postconviction filings.

{¶ 26} We note as well that "[t]he timeliness of a defendant's post-sentence motion to withdraw a guilty plea is a factor the trial court may consider and, an undue delay in the filing of the motion is a factor which adversely affects the credibility of a defendant's claims." *Morgan*, 2012-Ohio-5773, at ¶ 12 (10th Dist.). In *Morgan*, an "unexplained" ten-month delay after sentencing before filing a motion to withdraw the plea "adversely affected the credibility" of the defendant's claim. *Id.* at ¶ 13. The fifteen years that have elapsed between Mr. Davic's plea colloquy and the filing of his present motion similarly diminishes his credibility, particularly in light of his repeated postconviction motion practice. Given these deficiencies, we cannot conclude that the trial court abused its discretion when overruling the motion.

{¶ 27} Because the trial court did not abuse its discretion when denying Mr. Davic's motions seeking to withdraw his guilty plea or to vacate his conviction, the three assignments of error he asserts are overruled. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

LELAND and DINGUS, JJ., concur.

_____